925 P.2d 288

STATE of Hawai'i, Plaintiff–Appellee,

v.

RANGER INSURANCE CO., By and Through its Agent and Attorney In Fact, JAMES LINDBLAD, INC. (A–1 BAIL BONDS), and Ray Voeks, dba Ray's Bail Bonds, Surety–Appellants,

and

William Merino, Defendant.

No. 15996.

Supreme Court of Hawai'i.

Sept. 12, 1996.

Reconsideration Denied Oct. 9, 1996.

Stuart Phillip Shapiro, on the briefs, Honolulu, for surety-appellants Ranger Insurance Co., by and through its Agent and Attorney In Fact, James Lindblad, Inc. (A–1 Bail Bonds), and Ray Voeks, dba Ray's Bail Bonds.

Charlotte J. Duarte, Deputy Prosecuting Attorney, on the briefs, Kailua, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

In this companion case to *State v. Merino,* 81 Hawai'i 198, 915 P.2d 672 (1996), which arises out of the defendant William Merino's failure to appear for sentencing as ordered, the surety-appellants Ranger Insurance Co., by and through its agent and attorney in fact, James Lindblad, Inc. (A-1 Bail Bonds), and Ray Voeks, dba Ray's Bail Bonds (collectively, the Surety) appeal from the circuit court's (1) judgment and order of forfeiture of bail bond, filed March 5, 1991 (forfeiture judgment), (2) findings of fact and conclusions of law denying the Surety's motion to stay execution of bail forfeiture and extend time to produce Merino and/or to pay bail forfeiture, filed February 21, 1992 (order denying stay of execution), and (3) order denying the Surety's motion to vacate the forfeiture judgment and denying a hearing thereon, filed March 12, 1992 (order denying motion to vacate).

On appeal, the Surety asserts as points of error that the circuit court erred in: (1) orally granting the motion that resulted in the forfeiture judgment on December 6, 1990, after failing *sua sponte* to forfeit the bail bond when Merino did not appear for sentencing on November 23, 1990; (2) denying the Surety's motion that resulted in the entry of the order denying stay of execution; and (3) denying the Surety's motion that resulted in the entry of the order denying motion to vacate. We affirm.

## I. *BACKGROUND*

The background of the present appeal substantially appears in *Merino,* 81 Hawai'i at 201–211, 915 P.2d at 675–85. By way of supplementation, we set forth the following. After entering a no contest plea to a complaint charging criminal conspiracy in violation of Hawai'i Revised Statutes (HRS) § 705–520 (1993), the circuit court ordered Merino to appear for sentencing on November 14, 1988 and set bail in the amount of $2200.00. When Merino failed to appear as ordered, the circuit court issued a bench warrant and reset bail at $50,000.00. Merino later moved to withdraw his no contest plea, and, on May 25, 1990, after Merino was brought before the court pursuant to a return on a subsequent bench warrant, the circuit court reconfirmed bail at $50,000.00. On May 29, 1990, the Surety posted a bail bond on Merino's behalf, in accordance with HRS § 804–1 (1993),[1] in the amount of $50,000.00.

On November 2, 1990, following a series of continuances and a hearing on Merino's motion to withdraw his no contest plea, the circuit court orally denied the motion, scheduled sentencing for November 23, 1990, and—because Merino now posed a greater flight risk—reset bail at $100,000.00. The Surety posted a bond in the new amount on November 9, 1990. On November 23, 1990, defense counsel advised the court that Merino was confined in a San Francisco hospital due to a heart condition, and the circuit court continued sentencing to December 6, 1990, ordering defense counsel to advise Merino of the new date. Merino failed to appear for sentencing on December 6, 1990, his whereabouts being unknown. Pursuant to HRS §§ 804–17 (1993)[2] and 804–51 (1993),[3] the

---

1. HRS § 804–1 provides in relevant part that "[b]ail ... is the signing of the recognizance by the defendant and the defendant's surety ..., conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court." HRS § 804–2 (1993) provides that bail may consist, *inter alia*, of a "bond."

2. HRS § 804–17 provides:

   **Prompt appearance and response; default.** The names of all persons who have given bail or have become bound by recognizance to appear in any court, shall be called in open court on the day and at the time they are respectively bound to appear, and if they fail to appear promptly and respond thereto, their default shall be entered, and the entry shall be evidence of the breach of their appearance bonds or recognizances.

3. HRS § 804–51, which prescribes the procedure for bail forfeiture, provides in relevant part:

   Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal ... and surety ... on the bond, jointly and severally, for the full amount

circuit court orally granted the prosecution's motion for forfeiture of bail, issued another bench warrant, and reset bail at $500,000.00.

On December 11, 1990, the Surety filed a motion to modify the terms of bail forfeiture and to extend the time within which to locate Merino. On December 23, 1990, the circuit court denied the motion as premature on the basis that, pursuant to HRS § 804–51, *see supra* note 3, although the Surety was entitled to file a motion for exoneration from the ordered bail forfeiture, the statutory thirty-day period within which to do so did not begin to run until the entry of a written forfeiture judgment in favor of the State. Accordingly, the circuit court ruled that the Surety still had ample time within which to locate Merino.

Seventy-two days later, on March 5, 1991, the circuit court entered its forfeiture judgment against the Surety, Merino's whereabouts still being unknown. On March 15, 1991, the Surety filed a timely HRS § 804–51 motion, which sought to stay execution of the ordered bail forfeiture for a period of 120 days in order to accord the Surety additional time within which to produce Merino and/or pay the bail forfeiture. On April 5, 1991, the circuit court allowed the Surety an additional forty-two days in which to locate, apprehend, and surrender Merino, ruling that it would deny the Surety's motion if Merino did not appear by May 17, 1991. Unfortunately, the circuit court's largesse was to no avail; as of May 17, 1991, the Surety was clueless regarding Merino's whereabouts. Thus, on that day, the circuit court orally denied the Surety's HRS § 804–51 motion.

In January 1992, Merino was apprehended by law enforcement authorities in Seattle, Washington; he was returned to Hawai'i the next month. On February 19, 1992, the prosecution submitted proposed findings of fact, conclusions of law, and an order denying the Surety's HRS § 804–51 motion. On February 20, 1992, the Surety filed a bail bond surrender regarding Merino. *See* HRS § 804–14, *supra* at note 3. On February 21, 1992, the circuit court filed its order denying stay of execution on the grounds that the Surety had failed to show good cause why execution should not issue upon the forfeiture judgment, as required by HRS § 804–51. *See supra* note 3.

On March 12, 1992, the Surety filed an ex parte motion (1) to vacate the forfeiture judgment and the order denying stay of execution and (2) for remission and exoneration of its obligation on the bail bond. On the same day, the circuit court entered an order denying the motion without a hearing, ruling that it did "not provide a legal basis for the relief requested."

---

of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via certified mail, return receipt requested, to the surety ... on the bond, of the entry of the judgment in favor of the State, unless before the expiration of thirty days from the date that notice is given to the surety ... on the bond of the entry of the judgment ..., a motion or application of the principal [or] ... surety ... showing good cause why execution should not issue upon the judgment, is filed with the court. If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804–14 or section 804–41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If· the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

HRS § 804–14 (1993), entitled "Discharge of sureties," provides that "[t]hose who may have become bail for anyone, may at any time discharge themselves, by surrendering him to the custody of any sheriff or chief of police or his authorized subordinate."

HRS § 804–41 (1993), entitled "Discharge of surety," provides that, "[a]t any time *before the breach of the condition* of the bond, the surety may discharge oneself by surrendering the principal into the hands of any sheriff or the chief of police or [their] authorized subordinate." (Emphasis added.)

HRS § 804–7.4(2) (1993), entitled "General conditions of release on bail," predicates the release, *inter alia*, of any person on bail on the condition that "[t]he person shall appear for all court hearings unless notified by the person's attorney that the person's appearance is not required[.]"

The Surety filed a notice of appeal to this court on March 17, 1992, twenty-five days after the entry of the circuit court's order denying stay of execution.[4]

## II. *DISCUSSION*

A. *The Circuit Court Did Not Err In Orally Granting The Prosecution's Motion For Forfeiture Of Bail On December 6, 1990, Notwithstanding That It Did Not, Sua Sponte, Forfeit The Bail Bond On November 23, 1990, When Merino First Failed To Appear For Sentencing.*

1. *By granting a continuance, the circuit court did not relinquish its power to forfeit a bail bond, inasmuch as a continuance preserved the Surety's liability on the bond.*

The Surety contends that, in failing to forfeit the bail bond when—by virtue of alleged medical disability—Merino failed to appear for sentencing on November 23, 1990, the circuit court "waived its jurisdiction" to deem Merino in breach of a condition of the bail bond on December 6, 1990 and thereafter to enter a forfeiture judgment in favor of the State. In advancing its position, the Surety conveniently overlooks the fact that in the first instance Merino's counsel sought and received a continuance of the sentencing hearing, whereas in the second instance Merino's failure to appear was wholly unexcused.

▮ The Surety does not dispute that a defendant's unexcused failure to appear for a scheduled sentencing hearing, of which he or she—directly or through defense counsel—has notice, constitutes a breach of a general obligation of release on bail and, therefore, a breach of a condition of the bond securing that release. *See* HRS §§ 804–17 and 804–7.4(2) (1993), *supra* at notes 2 and 3. Moreover,

a continuance of the criminal proceeding also continue[s] liability on the appearance bond. . . . [I]f a day certain is fixed for [a]

defendant's scheduled appearance [at a time] when he is released on an appearance bond, [and,] on that day, the date of the appearance is set over for another day certain, . . . the continuance of the criminal proceeding also continue[s] liability on the appearance bond.

*James v. State,* 584 P.2d 213–14 (Okla.1978) (citing *Foster v. State,* 551 P.2d 1119 (Okla. 1976)). Thus, "if on a scheduled appearance date, the defendant or his attorney appears and the hearing is set over for another day certain, no further notice is required to be given the bondsm[a]n, and his liability on the bond continues." *Id.*

▮ It should be self-evident that the circuit court's continuance—at defense counsel's request—of Merino's sentencing hearing from the originally scheduled date to a subsequent one, due to Merino's excusable absence, in no way affected its power to forfeit the bail bond on the subsequent date after Merino inexcusably failed to appear. Accordingly, we hold that, as a result of the November 23, 1990 continuance, the "[S]urety's obligation to secure [Merino's] appearance continued unchanged and unhindered[.]" *United States v. Jones,* 719 F.2d 110, 112 (5th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 185 (1984) (citation and quotation marks omitted). That being the case, we further hold that the circuit court retained its power to forfeit the Surety's bail bond when Merino violated a condition of the bond on December 6, 1990, due to his unexcused failure to appear.

2. *Under the circumstances of this case, the delay between the date on which the circuit court orally granted the prosecution's motion for forfeiture of bail and the date of entry of the circuit court's written forfeiture judgment does not void the forfeiture judgment.*

▮ The Surety next contends, separate and apart from its "waiver of jurisdiction" argument, that the circuit court's delayed

---

**4.** The Surety's notice of appeal was timely—and we have appellate jurisdiction—because, pursuant to HRS § 804–51 and Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(1), it was filed within thirty days of "the appealable event," namely, the circuit court's entry, on February 21,

1992, of the order denying stay of execution, disposing of the Surety's motion attempting to show good cause why execution should not issue upon the forfeiture judgment. *State v. Camara,* 81 Hawai'i 324, 328–29 & n. 7, 916 P.2d 1225, 1229–30 & n. 7 (1996).

entry—from December 6, 1990 to March 5, 1991—of the written forfeiture judgment constituted reversible error as a matter of law. On the record before us, we disagree.

We recognize that HRS §§ 804–1, –7.4(2), –17, and –51, *see supra* notes 1, 2, and 3, read in pari materia, *see* HRS § 1–16 (1993), mandate that, upon a defendant's unexcused failure to appear for a court proceeding, (1) the defendant's "default shall be entered," (2) the default "shall be evidence of the breach of [an] appearance bond[ ]," and (3) *if* the defendant's bail bond is forfeited, "the court shall immediately" enter a forfeiture judgment in favor of the State and against the defendant and his or her surety. *See* Hawai'i Rules of Penal Procedure (HRPP) Rule 46 ("The right to bail before conviction or upon review, the form and amount thereof, and the matters of justification of sureties, forfeiture of bail, and exoneration of obligors and sureties shall be as provided by law. (See Hawai'i Revised Statutes, Chapter 804.)"); *Appearance Bond Surety v. United States,* 622 F.2d 334, 336 (8th Cir.1980) ("By [the defendant's] failure to appear before the district court … as ordered, the bond agreement was breached and the surety became absolutely liable in the amount of the bond…. Upon breach of the agreement, the district court had no discretion in determining whether the bond should be forfeited.") (Citing *United States v. Foster,* 417 F.2d 1254, 1256 (7th Cir.1969), and *United States v. Nolan,* 564 F.2d 376, 378 (10th Cir.1977)). Thus, by virtue of Merino's unexcused failure to appear at his December 6, 1990 sentencing hearing, the circuit court was obligated, as it did, to deem Merino in default of the conditions of his release on bail. Having orally granted the prosecution's motion for bail forfeiture, the circuit court should, *sua sponte,* "immediately" have entered a forfeiture judgment.

Notwithstanding that the circuit court's entry of the forfeiture judgment on March 5, 1991 was not "immediate," we nevertheless cannot accept the Surety's suggestion that it was somehow disadvantaged or otherwise prejudiced thereby; if anything, the Surety actually benefitted from the "delay." The Surety's December 11, 1990 filing of its motion to modify the terms of bail forfeiture and to extend the time within which to locate Merino establishes that it had actual notice of Merino's nonappearance within five days of the circuit court's oral forfeiture ruling. Thus, the Surety cannot claim to have relied to its detriment on the circuit court's failure to enter an "immediate" forfeiture judgment as some kind of implied promise that such a judgment would not ultimately be forthcoming. Moreover, as a result of the circuit court's "delay"—which, as discussed in Section I. of this opinion, *supra,* in great measure reflected gargantuan deference for the Surety's interests—, the Surety was afforded a full ninety pre-forfeiture judgment days within which to produce Merino (or hope that he was produced) and an additional seventy-three post-forfeiture judgment days (through May 17, 1991) within which to search for him before the circuit court denied the Surety's HRS § 804–51 motion.

Accordingly, we hold that the circuit court's "delayed" entry of forfeiture judgment resulted in no prejudice to the Surety and did not render the judgment void or otherwise unlawful. *See Jones,* 719 F.2d at 112 ("Forfeiture of the bond at the … later date … [did] not implicate any prejudice to [the surety in connection with] the … forfeiture proceedings.").

## B. The Circuit Court's Order Denying Stay Of Execution Did Not Constitute An Abuse Of Discretion.

■ The Surety urges in its brief, albeit obliquely, that the circuit court misapplied HRS § 804–51 and therefore abused its discretion when, on February 21, 1992, it entered its order denying stay of execution on the grounds that the Surety had failed to show good cause why execution should not issue upon the forfeiture judgment. Specifically (despite the fact that, in the course of the April 5, 1991 hearing on its HRS § 804–51 motion, the Surety made no attempt to show "good cause" and expressly admitted that "there [was] absolutely no reason to consider or grant its motion as a matter of law"), the Surety now suggests in its brief that "good cause why execution should not issue upon the [forfeiture] judgment," within

the meaning of HRS § 804–51, was established as of February 21, 1992 inasmuch as, by that time, Merino was "surrendered" for purposes of HRS § 804–14. *See supra* note 3.

*State v. Camara,* 81 Hawai'i 324, 916 P.2d 1225 (1996), in which this court recently analyzed the very statutory language upon which the Surety relies, reveals the meritlessness of the Surety's position.

As previously indicated, under HRS § 804–51, execution upon a judgment for forfeiture shall issue forthwith upon the expiration of thirty days from the date the surety receives notice of the judgment of forfeiture [hereinafter, thirty-day search period], unless the principal or the surety (or both) files a motion or application "showing good cause why execution should not issue upon the judgment," HRS § 804–51, *prior to the expiration of the thirty-day search period.* Problematically, Hawai'i's forfeiture statute does not specify what constitutes "good cause why execution should not issue upon the judgment." Nor has this court had prior occasion to construe "good cause" in the context of Hawai'i's forfeiture statute.

. . . In our view, "good cause why execution should not issue upon the judgment" of forfeiture may be satisfied by the defendant, *prior to the expiration of the thirty-day search period* [by]: (1) providing a satisfactory reason for his or her failure to appear when required; or (2) surrendering or being surrendered [pursuant to HRS §§ 804–14 or –41, *see supra* note 3].

. . . .

The legislative history [*i.e.,* Sen. Stand.Comm.Rep. No. 857, in 1989 Senate Journal, at 1127–28] clearly demonstrates the legislature's intent to allow a surety the opportunity to locate the principal *before execution of the judgment of forfeiture actually occurs,* and, if the principal surrenders or is surrendered *during the thirty-day search period,* the surety would be entitled to return of the bond, less costs. Such an intent is consistent with the princip[le] that the primary purpose of bail in a criminal case is not to punish a defendant or surety, nor to increase the revenue of the State, but rather to honor the presumption of innocence, to allow a defendant to prepare his or her case, and to ensure the defendant's presence in the pending proceeding.

. . . .

Thus, based on our review of HRS § 804–51 and its legislative history, we hold that "good cause why execution should not issue upon the judgment" of forfeiture may be shown by the defendant surrendering or being surrendered *prior to the expiration of the thirty-day search period.*

*Id.* at 330–31, 916 P.2d at 1231–32 (citations omitted) (some quotation marks in original and some omitted) (some brackets in original and some added) (some emphasis added and some omitted).

In the present case, the thirty-day search period commenced on March 7, 1991—when the Surety averred through its counsel's affidavit that it received notice of the circuit court's March 5, 1991 forfeiture judgment—and terminated on April 4, 1991. (Of course, as noted above, the circuit court magnanimously allowed the Surety until May 17, 1991 to locate, apprehend, and surrender Merino.) Thus, the Surety's HRS § 804–51 motion, which was filed on March 15, 1991, was timely and served to defer execution upon the forfeiture judgment until February 21, 1992, when the circuit court filed its order denying the motion. The Surety's timely notice of appeal on March 17, 1992, in turn, further stayed execution upon the forfeiture judgment. *See supra* notes 3 and 4.

However, as we have noted, the Surety failed both to locate Merino prior to the execution of the March 5, 1991 forfeiture judgment and to provide a satisfactory reason for Merino's failure to appear when required. More significantly, Merino neither surrendered nor was surrendered *prior to the expiration of the thirty-day search period.* Accordingly, consistent with the *Camara* analysis, we hold that the Surety's HRS § 804–51 motion failed to make the requisite showing of "good cause why execution should not issue upon the [forfeiture] judgment." That being the case, we further hold that the circuit court's order denying

stay of execution did not constitute an abuse of discretion.[5]

### III. CONCLUSION

Based on the foregoing analysis, we affirm the circuit court's forfeiture judgment, order denying stay of execution, and order denying motion to vacate.

---

**5.** As a final matter, as noted above, the Surety asserts on appeal that the circuit court committed an abuse of discretion when, on March 12, 1992, it summarily entered its order denying the Surety's motion to vacate, which the Surety had filed on the same day, purportedly pursuant to HRS § 804–51. The Surety is simply mistaken. Without addressing its merits, the motion to vacate did "not provide a legal basis for the relief requested," as the circuit court ruled, because it was not filed within the time limit imposed by HRS § 804–51, and the circuit court was therefore without power to consider it. *See supra* notes 3 and 4. The Surety's unsupported proposition that the pendency of its HRS § 804–51 motion, filed on March 15, 1991, somehow tolled the statute's thirty-day filing window, such that the Surety was authorized to file a second HRS § 804–51 motion more than a year after it received notice of the forfeiture judgment, is without merit. HRS § 804–51 permits the filing neither of a *second* motion seeking to show "good cause why execution should not issue" nor *any* motion after the closing of the thirty-day window. The Surety's sole recourse from the "appealable event"—the February 21, 1992 entry of the circuit court's order denying stay of execution—was by way of an appeal to this court. *See supra* note 4.