962 P.2d 1008

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Norman FLORES, Defendant,**

and

**A–Hawaii Bail Bonds, Surety, Real Party in Interest–Appellant.**

**No. 20438.**

Intermediate Court of Appeals of Hawai'i.

Aug. 14, 1998.

---

Richard D. Gronna on the briefs for surety, Real Party In Interest-Appellant.

Mark Yuen, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for Plaintiff-Appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Associate Judge.

The issue presented by this appeal is whether the surety on a forfeited bail bond is entitled to relief from liability in the situation where the surety has located the defendant, but the law enforcement officers in the jurisdiction where the defendant is located allegedly refuse to arrest the defendant and return him to Hawai‘i because Plaintiff–Appellee State of Hawai‘i (the State), the obligee on the bond, has failed to enter into the Federal Bureau of Investigation's National Crime Information Center (NCIC) computer system information that a bench warrant has been issued for the defendant's arrest.

The First Circuit Court (circuit court) answered the foregoing question in the negative and refused to set aside a judgment and order forfeiting a bail bond posted by Surety, Real Party in Interest–Appellant A–Hawaii Bail Bonds (A–Hawaii) on behalf of Defendant Norman Flores (Defendant). We affirm.

## BACKGROUND

Following Defendant's indictment and subsequent arrest for one count of Promoting a Dangerous Drug in the Second Degree, A–Hawaii posted a bail bond, undertaking that

> Defendant will appear and answer all charges mentioned in whatever court it may be prosecuted within the State ..., and will at all times be amenable to the orders and process of the court, and, if convicted, will appear for judgement [sic], and render self in execution thereof, or failing to perform either of these conditions will pay to the State ..., as provided in sections 804–51 Hawaii [Hawai‘i] Re-

vised Statutes the sum of Twenty thousand & 00/100 dollars ($20,000.00).[1] (Footnote added.) However, Defendant fled to American Samoa and failed to appear for trial on June 25, 1996. Consequently, the circuit court issued a bench warrant for Defendant's arrest and on July 1, 1996, ordered that Defendant's bail bond be forfeited.[2] By a letter dated July 1, 1996, and sent by certified mail, return receipt requested,[3] a deputy prosecutor for the City and County of Honolulu, State of Hawai'i, notified A–Hawaii of Defendant's failure to appear in court on June 25, 1996 and of the subsequent bail forfeiture.

On July 23, 1996, A–Hawaii filed a motion to set aside the bail forfeiture order. In an affidavit attached to the motion, A–Hawaii's attorney explained, in part, as follows:

> h. That Defendant fled to American Samoa without the knowledge of [A–Hawaii].
>
> i. That [A–Hawaii is] sending Tiafala Hodges to American Samoa to have ... Defendant returned to this jurisdiction where his bond will be surrendered.
>
> j. That [A–Hawaii] is willing to pay for all costs that were incurred by the State for ... Defendant's failure to appear[.]

At an August 29, 1996 hearing on the motion, A–Hawaii requested a continuance of the hearing, explaining that it had determined the whereabouts of Defendant in American Samoa but was unable to apprehend him. According to A–Hawaii, Ameri-can Samoan law enforcement officials were willing to arrest Defendant and extradite him back to Hawai'i, but were powerless to do so until information about Defendant's fugitive status and the outstanding warrant for Defendant's arrest were entered into the NCIC computer system. In light of A–Hawaii's explanations, the circuit court granted a sixty-day continuance.

At the continued hearing on October 24, 1996, the necessary information about Defendant still had not been entered into the NCIC computer system. Accordingly, A–Hawaii requested another sixty-day continuance. Over the objection of the State, the circuit court granted the continuance.

At the second continued hearing on December 19, 1996, A–Hawaii informed the court that the situation had not changed since the previous hearing. A–Hawaii then argued that it should not have to suffer the forfeiture of the bond:

> [A–HAWAII'S COUNSEL]: Your Honor, if I could simply state, my understanding is that as I have stated all along since the filing of this motion, once an individual leaves the islands it is virtually impossible for the bonding company to make any effort to inform law enforcement and the jurisdiction where they have—the people have fled to to [sic] pick them up.
>
> Anyway, we can do that once the warrant goes into the national computer system. And I have contacted [the Honolulu Police Department] and the warrant system where NCIC is put in and fed into the

---

1. Hawai'i Revised Statutes (HRS) § 804–7.4 (1993) prescribes certain general conditions for a release on bail:

   Any person released on bail ... shall be released subject to the following conditions:

   (1) The person shall not commit a federal, state or local offense during the period of release;

   (2) The person shall appear for all court hearings unless notified by the person's attorney that the person's appearance is not required; and

   (3) The person shall remain in the State of Hawaii [Hawai'i] unless approval is obtained from a court of competent jurisdiction to leave the jurisdiction of the court.

   Based on our review of the record, it appears that neither the First Circuit Court's written Order Pertaining to Bail nor the bail bond underwritten by Surety, Real Party in Interest–Appel-lant A–Hawaii Bail Bonds (A–Hawaii) in favor of Defendant Norman Flores (Defendant) notified Defendant of general conditions (1) and (3) of HRS § 804–7.4. We recommend that the standard forms for the order pertaining to bail and the bail bond be amended to include such notice.

2. Although the bond in Defendant's favor was posted by "A–Hawaii Bail Bonds," the Judgment and Order of Forfeiture of Bail Bond filed by the First Circuit Court on July 1, 1996 "ordered and declared the forfeiture of the bail bond ... executed by ... AMWEST SURETY INSURANCE COMPANY...."

3. The return receipt for the letter is not in the record on appeal. However, a copy of the letter contained in the record indicates that the letter was received on July 10, 1996.

computer so that it goes into the national system for purposes of extraditing. They have informed me that the request has to come from the prosecutor's office.

Now, my understanding is that I don't know when or if that request has actually come down from the prosecutor's office, but in order to get somebody extradited, in order for the bondsman to go pick up somebody out of state that warrant has to be in the national system because the problem when a bondsman attempts to pick somebody up without a warrant, that warrant not being in the national system, it puts the bondsman at risk for being himself charged for possible kidnapping because law enforcement in the jurisdiction where the individual's fled to doesn't recognize the fact that there's a warrant out for him.

Now, I understand that their argument has been made, but, Your Honor, the bottom line is this, I don't think that it's fair that there appears to be more penalty on behalf of the bond company when the State does not move in an expedient matter [sic] to put the warrant in the system to enable the bondsman to bring the guy back up.

My understanding is that the bondsman has been in contact with the chief of police in America [sic] Samoa. They know where [Defendant] is. The only thing they're waiting for is to bond—to get the warrant into the national system so American Samoa will recognize the fact that he's wanted up here. And if the State wants to extradite him back up here to face the charges.

That's essentially all that they're waiting for....

As I mentioned to the Court before, once it gets in there they can have the guy picked up. The bond company will pay any and all costs to the State to have him brought back here to get him extradited so there will not be any cost incurred by the State to have him brought back, but I don't think it's fair for the bond company, they can pick him up, but their hands are virtually tied to do it.

THE COURT: Well, ... bonding is a risk. And certainly the state can do some things, but you're the one that posted bond and [Defendant] skipped to American Samoa. Certainly the State does have some responsibility with regard to these pending matters, but their responsibility is not to the bonding company.

But nonetheless, [Deputy Prosecutor], did you have anything to say on this motion?

[DEPUTY PROSECUTOR]: Your Honor, my understanding is when the bench warrant issues from the court—by order of the court and it's the court that orders that he be bench warranted, so I can't understand why the process of extradition is required or necessary as a—as a first step to having that bench warrant in the system because it's already ordered by the court at the time of the initial hearing and we are in the process of extraditing [Defendant]. But I don't understand the logic of [A–Hawaii's counsel's] argument. I mean, the court orders bench warrants, not our office.

\* \* \*

THE COURT: I don't see anything else that prevents you from your clients being in contact with the police there in American Samoa....

\* \* \*

Your client can go pick [Defendant] up.

[A–HAWAII'S COUNSEL]: They can't do that either.

THE COURT: Sure they can.

[A–HAWAII'S COUNSEL]: They— then they subject themselves to facing criminal charges.

THE COURT: Bonding is a risk. The motion is denied.

\* \* \*

The dismissal is with prejudice....

On December 31, 1996, the circuit court entered an "Order Denying Defendant's Motion to Set Aside Bail Forfeiture."[4] This appeal followed.

4. Although the title of the First Circuit Court's December 31, 1996 order reflects that what was being denied was "Defendant's Motion to Set Aside Bail Forfeiture," the record on appeal indi-

## STANDARD OF REVIEW

■ The construction of Hawai'i's bail bond forfeiture scheme, as set forth in Hawai'i Revised Statutes (HRS) § 804–51 (1993), and in particular, the determination of whether a principal or a surety under a bail bond may secure relief from a judgment of forfeiture, involves a question of law reviewable *de novo*. *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996).

■ However, a lower court's order denying relief from a judgment of bail bond forfeiture on grounds that a surety has not, as required by HRS § 804–51, shown "good cause why execution should not issue upon the judgment" is reviewed for abuse of discretion. *State v. Ranger Ins. Co.*, 83 Hawai'i 118, 122–24, 925 P.2d 288, 292–94 (1996). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Walsh v. Chan*, 80 Hawai'i 212, 215–16, 908 P.2d 1198, 1201–02 (1995) (internal quotation marks omitted).

## DISCUSSION

### A.

HRS § 804–51 provides, in relevant part, as follows:

**Procedure.** Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State, *unless before the expiration of thirty days from the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State [hereinafter, thirty-day search period], a mo-*

*tion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court.* If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804–14 or section 804–41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

(Emphasis, bracketed material added.)

Under the foregoing statute, the dispositive issue that a trial court must determine before allowing vacatur of a judgment of bail forfeiture is whether "good cause why execution should not issue upon the judgment" has been demonstrated. The Hawai'i Supreme Court has noted that no specification is contained in the statute as to "what constitutes 'good cause why execution should not issue upon the judgment.'" *Ranger Ins. Co.*, 83 Hawai'i at 123, 925 P.2d at 293 (quoting *Camara*, 81 Hawai'i at 330–31, 916 P.2d at 1231–32). However, the supreme court has observed that

[g]enerally, sufficient cause to set aside a forfeiture is a showing that the party did not break his or her recognizance intentionally, with the design of evading justice, or without a sufficient cause or reasonable excuse, such as unavoidable accident or inevitable necessity preventing his or her appearance.

*Id.* at 330, 916 P.2d at 1231 (quoting *Makeig v. State*, 802 S.W.2d 59, 62–63 (Tex.Ct.App. 1990), internal quotation marks and brackets

cates that the Motion to Set Aside Bail Forfeiture was actually filed by A–Hawaii.

omitted). The *Camara* court also concluded that

> "good cause why execution should not issue upon the judgment" of forfeiture may be satisfied by the defendant, prior to the expiration of the thirty-day search period: (1) providing a satisfactory reason for his or her failure to appear when required; or (2) surrendering or being surrendered.

*Id.* at 330, 916 P.2d at 1231. Because the defendant in *Camara* had been surrendered within the thirty-day search period, the supreme court held that the surety was entitled to a return of its bond, less costs.

Subsequently, in *Ranger Ins. Co.*, the supreme court held that a surety failed to show good cause why execution should not issue upon a bond forfeiture judgment where: (1) the surety failed to locate the defendant prior to the execution of the forfeiture judgment; (2) the surety failed to provide a satisfactory reason for the defendant's failure to appear when required; and (3) the defendant neither surrendered nor was surrendered *"prior to the expiration of the thirty-day search period."* 83 Hawai'i at 123, 925 P.2d at 293 (italics in original).

In this case, our review of the record reveals that A–Hawaii did not provide any explanation as to why Defendant fled to American Samoa and why Defendant failed to appear in court when required. Additionally, it is undisputed that Defendant neither surrendered nor was surrendered to appropriate authorities prior to the expiration of the thirty-day search period prescribed by HRS § 804–51. Indeed, despite the grant of two continuances of the hearing on A–Hawaii's motion to set aside the forfeiture judgment allowing Defendant 120 extra days to surrender or be surrendered to appropriate authorities, Defendant had still not surrendered or been surrendered at the expiration of both continuance periods.

Unlike in *Ranger Ins. Co.*, however, A–Hawaii did locate Defendant prior to the execution of the July 1, 1996 Judgment and Order of Forfeiture of Bail Bond. A–Hawaii argues that because it located Defendant but was prevented from returning him involuntarily to Hawai'i by the State's failure to enter information of the bench warrant for Defendant's arrest into the NCIC system, it should be exonerated from liability under the bond.

### B.

The United States Supreme Court has long recognized as "settled law" that "the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, *the act of the obligee, or the act of law.*" [5] *Taylor v. Taintor,* 16 Wall. 366, 83 U.S. 366, 369, 21 L.Ed. 287 (1872) (emphasis added). The Hawai'i Supreme Court has similarly expressed that "there is no reason for penalizing sureties where it appears that they are unable, through no fault of their own or of the principal, to perform the conditions of [a bail] bond[.]" *Camara,* 81 Hawai'i at 330, 916 P.2d at 1231. Accordingly, "forfeitures of bail bonds will generally be vacated ... where it appears to the satisfaction of the court that uncontrollable circumstances prevented appearance pursuant to the stipulations in the bond, or that the default of the principal was excusable." *Id.* (brackets, internal quotation mark omitted).

---

5. In *Taylor v. Taintor,* 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1872), the United States Supreme Court explained the three categories of cases in which a bail bonds surety would be exonerated from liability under a bond as follows:

> Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third.

> In such cases the governor acts in his [or her] official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he [or she] refuse[s], there is no means of compulsion. But if he [or she] act[s], and the fugitive is surrendered, the State whence [the fugitive] is removed can no longer require his [or her] appearance before [the State's] tribunals, and all obligations which [the State] has taken to secure that result thereupon at once, *ipso facto,* lose their binding effect.

> *Id.* at 369–70.

■ A–Hawaii contends that the failure of the State to enter the bench warrant information into the NCIC system constituted an act or omission of the obligee which prevented it from meeting its obligations under the bond. In light of such uncontrollable circumstances, A–Hawaii maintains that it should be exonerated from liability under the bond. For the following reasons, we disagree.

### C.

First, A–Hawaii has provided us with no support for its position that the State was obligated to enter information regarding the issuance of a bench warrant for Defendant's arrest into the NCIC system.[6]

Second, A–Hawaii never requested that the circuit court enter or order the entry of the requested information into the NCIC system.

Third, although A–Hawaii's counsel represented to the circuit court that American Samoan law enforcement officials were unable to arrest Defendant without information about the bench warrant for Defendant's arrest being entered into the NCIC system, no evidence was ever offered to support this representation.

In *People v. Diaz*, 862 P.2d 1031 (Colo.Ct. App.1993), the Colorado Court of Appeals held that a district attorney's failure to place arrest warrant information into the NCIC system did not exonerate a surety from liability under a bail bond. The court noted that

it was the arrest warrant itself rather than any computer entry [into the NCIC system] that authorized defendant's arrest as a fugitive. . . .

Here, there is no indication in the record that copies of the arrest warrant itself were not available for sureties' use continuously since its issuance. Further, there is also no indication in the record why a copy of the arrest warrant itself or some other evidence of defendant's fugitive status would not also have been sufficient, by itself, or could not have been available for sureties to have obtained the assistance of the Florida police in arresting defendant.

\* \* \*

Moreover, we are not aware of any requirement in Colorado law that arrest warrants issued in this state must be placed on any national crime computer system. . . .

Under these circumstances, there is no merit in the sureties' claim that the lack of an entry on the national crime computer system made it impossible for them to perform their obligations on the bond. And, sureties' effort to place the blame upon the state for their failure to have effected the apprehension of the fugitive defendant in Florida is not convincing.

*Id.* at 1032.

■ In this case, we are similarly not convinced that entry of the bench warrant information into the NCIC system was a prerequisite to an arrest of Defendant by American Samoan law enforcement officials.

---

**6.** We are aware that HRS § 846–3 (1993) provides as follows:

    **Reporting to [Hawai'i criminal justice] data center.** The chiefs of the police of the counties of the State and agencies of state and county governments having power of arrest shall furnish the data center with descriptions of all such persons who are arrested by them for any felony or misdemeanor, or as fugitives from the criminal justice system of another jurisdiction, or for any offense declared by rule or regulation promulgated by the attorney general to be a significant offense necessary to be reported for the proper administration of criminal justice. The data center shall in all appropriate cases forward necessary identifying data and other information to the system maintained by the Federal Bureau of Investigation.

While the foregoing statute appears to mandate the forwarding of certain arrest information to the Hawai'i criminal justice data center (data center), and in turn, the forwarding by the data center of necessary information to the system maintained by the Federal Bureau of Investigation, there appears to be no statute which mandates the entry of information regarding the issuance of a bench warrant for the arrest of a defendant who has failed to appear in court.

    The record on appeal indicates some confusion among the various law enforcement agencies as to whose responsibility it was to forward the bench warrant information to the data center. It seems to us that the court that issued the bench warrant would be the logical entity to forward or order the forwarding of such information to the data center.

We take judicial notice that American Samoa, like nearly all the states and territories of the United States, has enacted the Uniform Criminal Extradition Act (UCEA), which implements the constitutional requirements of the Extradition Clause, Article IV, § 2, clause 2 of the United States Constitution [7] and implementing federal legislation,[8] and sets forth the procedures for arresting a fugitive from bail prior to the official requisition of that fugitive by the governor of the state from which the fugitive fled (demanding state). *See* American Samoa Code Annotated (ASCA) title 46, chapter 09.

■ American Samoa's UCEA permits an arrest warrant to be issued for an individual believed to be in American Samoa, who has been charged "on the oath of any *credible person* before any judge or magistrate of this territory" with having committed a crime in another state and fleeing from justice. ASCA § 46.0914 [9] (emphasis added). Clear-ly, a bail surety would qualify as a "credible person" who could request the arrest of an alleged fugitive from justice, and courts in states with a UCEA provision similar to ASCA § 46.0914 have so held. *See, e.g., Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547 (9th Cir.1974) (holding that California's version of the UCEA "abrogates the foreign bondsman's common law right to pursue, apprehend and remove his [or her] principal from California without resort to process" and "interjects a mandatory series of court proceedings" which a foreign bondsman must follow to obtain a warrant to arrest and remove a fugitive from bail from another jurisdiction); *Commonwealth v. Wilkinson,* 415 Mass. 402, 613 N.E.2d 914 (1993) (holding that the Massachusetts UCEA "permits any credible person, such as a bail bondsman, to request the arrest of alleged fugitives with or without warrants issued by the Commonwealth"); *State v. Lopez,* 105 N.M. 538, 734

---

**7.** Article IV, § 2, clause 2 of the United States Constitution provides, in relevant part:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he [or she] fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

**8.** Congress has implemented Article IV, § 2, clause 2 of the United States Constitution by enacting a statute, 18 U.S.C.S. § 3182, which prescribes the procedures to be followed by officials in both the demanding and asylum states when the return of a fugitive from justice is sought. At the time Defendant fled to American Samoa, 18 U.S.C.S. § 3182 provided as follows:

**Fugitives from State or Territory to State, District or Territory**

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate [United States magistrate judge] of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate [United State magistrate judge] of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him [or her] to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he [or she] shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

The text of the foregoing statute remains unchanged; however, on October 11, 1996, P.L. 104–294, Title VI, § 601(f)(9), 110 Stat. 3500 amended the heading and text of the statute by inserting a comma after "District" wherever the word "District" appeared.

**9.** American Samoa Code Annotated (ASCA) § 46.0914 specifically provides:

Whenever any person within this territory is charged, on the oath of any credible person before any judge or magistrate of this territory, with the commission of a crime in any other state and, except in cases arising under 46.0905, with having fled from justice, or whenever complaint has been made before the High Court of American Samoa setting forth on the affidavit of any credible person in another state that a crime has been committed in such other state and that the accused has been charged in such state with the commission of the crime and, except in cases arising under 46.0905, has fled therefrom and is believed to have been found in this territory, the judge or magistrate shall issue a warrant directed to the Attorney General, public safety commissioner or sheriff directing him [or her] to apprehend the person charged wherever he [or she] may be found in this territory and bring him [or her] before the High Court of American Samoa to answer the charge or complaint and affidavit. A certified copy of the sworn charge or com-

P.2d 778, 782 (Ct.App.1986) (holding that under the New Mexico UCEA, "a bondsman may petition a judge or magistrate in this state for the issuance of an arrest warrant for the apprehension of an individual alleged to have violated the terms of his [or her] bail").

■   Additionally, ASCA §§ 46.0915 and 46.0916 provide:

**46.0915   Lawful arrest—By officer or private citizen without warrant.**

The arrest of a person may also be lawfully made by an officer or a private citizen without a warrant, upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding 1 year; but when so arrested the accused must be taken before the High Court of American Samoa with all practicable speed and complaint must be against him [or her] under oath setting forth the ground for the arrest as in 46.0914, and thereafter, his [or her] answer shall be heard as if he [or she] had been arrested on a warrant.

**46.0916   Commitment to jail required when.**

If, from the examination before the High Court of American Samoa, it appears that the person held is the person charged with having committed the crime alleged, that he [or she] probably committed the crime and, except in cases arising under 46.0905, that he [or she] has fled from justice, the High Court of American Samoa must commit him [or her] to jail by a warrant reciting the accusation, for such a time specified in the warrant as will enable the

plaint and affidavit upon which the warrant is issued shall be attached to the warrant.

arrest of the accused to be made under a warrant of the Governor on a requisition of the executive authority of the state having jurisdiction of the offense unless the accused gives bail as provided in this chapter, or until he [or she] is legally discharged.

Thus, under American Samoa's UCEA, a private person, such as an agent of A–Hawaii, would be able to effect a warrantless arrest of Defendant, as long as the procedural due process requirements set out in ASCA § 46.0915 were subsequently complied with. *Accord Lopez,* 734 P.2d at 783 (holding that under § 31–4–14 of New Mexico's UCEA, a private bondsman or his or her agents is authorized "to arrest a bonded principal without a warrant," subject to the qualification that "the individual arrested must be promptly taken before a judge or magistrate in this state, to be held pursuant to the [UCEA]"); *State v. Epps,* 36 Or.App. 519, 585 P.2d 425, 428 (Ct.App.1978) (holding that under Oregon's UCEA, bail bond surety agents "were legally authorized to arrest [a bail fugitive] and take him [or her] before a judge or magistrate with all practicable speed for legal proceedings to determine if [he or she] was in fact the person wanted and the charge against him [or her] was extraditable").

In this case, A–Hawaii did not exercise any of the options available to it under American Samoa's UCEA to secure Defendant's arrest as a fugitive from justice. Consequently, A–Hawaii never triggered an obligation on the part of the State, through the governor, to decide whether to requisition the Governor of American Samoa to extradite Defendant to Hawaiʻi.[10]   ASCA § 46.0916. Under the cir-

10.   The Hawaiʻi Supreme Court has stated that "returning the bond to the surety, less costs, is consistent with the general principle that the primary purpose of bail is not to punish the defendant or surety, but to secure the presence of the defendant to answer the charges against him or her." *State v. Camara,* 81 Hawaiʻi 324, 332, 916 P.2d 1225, 1233 (1996) (citation omitted). According to the supreme court, encouraging bondspersons "to cooperate with the appropriate authorities by providing information of a defendant's whereabouts, so that such authorities may take the necessary precautions when apprehend-

ing the defendant, would promote both public safety and the safety of the bondspersons and the defendant." *Id.*

Consistent with the foregoing principles, we believe that if A–Hawaii had secured Defendant's arrest pursuant to American Samoa's Uniform Criminal Extradition Act, ASCA title 46, chapter 09, thereby prompting the Governor of the State of Hawaiʻi to requisition the Governor of American Samoa to extradite Defendant back to Hawaiʻi, and if A–Hawaii had thereafter paid for the costs of extraditing Defendant to Hawaiʻi, a more plausible argument could be made that good cause existed why Defendant should be allowed to recover the amount of its bond, less the costs of extradition.

cumstances, we cannot conclude that the circuit court abused its discretion when it failed to set aside the judgment forfeiting Defendant's bond.

Affirmed.