916 P.2d 1225

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Patricia M. CAMARA, Defendant–Appellee,**

**and**

**Aloha Bail Bonds, Surety–Appellant.**

No. 18606.

Supreme Court of Hawai'i.

May 15, 1996.

Richard D. Gronna, on the briefs, Honolulu, for surety-appellant Aloha Bail Bonds.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., KLEIN, LEVINSON, and RAMIL, JJ., and WONG, Circuit Judge, in Place of NAKAYAMA, J., recused.

MOON, Chief Justice.

Surety-appellant Aloha Bail Bonds (Aloha or the surety) appeals from an order of the circuit court denying its motion to set aside a judgment of forfeiture of an appearance bond (motion to set aside). On appeal, Aloha contends that the circuit court erred in determining that a judgment of forfeiture may be set aside only if the movant shows good cause for the defendant's failure to appear in court when required. For the reasons discussed below, we hold that the circuit court's interpretation of Hawai'i's forfeiture statute was unduly restrictive. We therefore vacate the circuit court's order denying Aloha's motion to set aside and remand this case for a rehearing on Aloha's motion to set aside consistent with the construction of Hawai'i's forfeiture scheme outlined in this opinion.

## I. BACKGROUND

On December 29, 1993, defendant-appellee Patricia M. Camara (Camara or the principal) was charged with attempted murder in the first degree and using or threatening to use a firearm in the commission of a separate felony. On January 3, 1994, the circuit court set bail at $150,000, and, on January 12, 1994, Aloha posted a bail bond in the required amount.

> Bail, or the giving of bail, is the signing of the recognizance by the defendant and the defendant's surety or sureties, conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court.

Hawai'i Revised Statutes (HRS) § 804–1 (1993); see also United States v. Craft, 763 F.2d 402, 404 (11th Cir.1985) ("A bond is a contract between the surety and the government that[,] if the government releases the principal from custody, the surety will undertake that the principal will appear personally at any specified time and place.... It is thus the surety's responsibility to ensure the principal's attendance." (Internal quotation marks and citation omitted.)).

The bail bond having been posted, and Camara having been released, Camara became obligated to make all scheduled court appearances, as provided in HRS § 804–7.4 (1993), which states in relevant part:

> Any person released on bail, recognizance, supervised release or conditional release shall be released subject to the following conditions:
>
> ....

(2) The person shall appear for all court hearings unless notified by the person's attorney that the person's appearance is not required....

HRS § 804-7.4; *see Pelekai v. White,* 75 Haw. 357, 363 n. 3, 861 P.2d 1205, 1209 n. 3 (1993) ("The right to release before trial is conditioned upon the accused giving adequate assurance that he [or she] will stand trial and submit to judgment if found guilty." (Citations omitted.)).

Camara's case was called for trial on September 6, 1994, at which time jury selection was commenced. Camara appeared on the first day of trial. On the morning of September 8, 1994, Camara apparently failed to appear.[1]

The court reconvened on September 8, 1994, at 1:30 p.m., at which time the following colloquy between the court and Camara's counsel occurred:

THE COURT: [Counsel, is there] anything new with respect to Mrs. Camara?

[COUNSEL]: [I] called her home ... and left three messages indicating what had gone on in court. This morning I had told her that the bond at present is forfeited, that she should show up this afternoon at 1:30. Tomorrow, if she doesn't, that tomorrow at 8:30 is her absolutely, positively last chance. That a bench warrant will issue for her arrest. That she will, in all probability, not be given bail at that time if she is picked up on that charge, and she will await trial at women['s] prison.

Mr. Chinen has contacted a—an investigator ... to see if he could find her.... I also contacted the bonds[person], Art Lee of [Aloha] Bail Bonds. [The bondsperson] sent someone out to Waianae[, where Camara resides,] and ... he had gone to [Camara's] house and she was not there. [Furthermore,] he was actually combing the streets of Waianae and Nanakuli looking for her there.

At present, Your Honor, those are the things that have been done in an attempt to bring Mrs. Camara to this courtroom.

The court stayed forfeiture of the bond on the condition that Camara appear in court at 8:30 a.m. the following morning.

The following morning, September 9, 1994, Camara again failed to appear in court as required. Defense counsel represented to the court that, despite the efforts of numerous people, including himself, an investigator/bounty hunter, and the police, Camara's location remained unknown. Specifically, defense counsel stated:

[T]he investigator who Mr. Chinen yesterday retained and called, could not find Mrs. Camara. My understanding also is that Mr. Amaral, who is evidently an investigator or bounty hunter ... with the bail bondsperson also could not find Mrs. Camara. I called ... both Mr. Chinen and the bonds[person] this morning, and there really is no other information other than that.

[M]rs. Camara has both my office number and my home number. There were no messages this morning when I arrived or left. I checked again just prior to court resuming this morning and there was no message from Mrs. Camara. I called her twice this last night and again this morning at 8:30; there was no response at the number that I have for her.

HRS § 804-17 (1993) provides that

[t]he names of all persons who have given bail or have become bound by recognizance to appear in any court, shall be called in open court on the day and at the time they are respectively bound to appear, and *if they fail to appear promptly and respond thereto, their default shall be entered, and the entry shall be evidence of the breach of their appearance bond* or recognizances.

---

1. The record does not contain the transcripts of the proceedings that apparently took place on the morning of September 8, 1994. As best as we can determine from the record and the briefs of the parties, the court apparently ordered that a bench warrant be issued and that the bond be forfeited; the court, however, indicated that the issuance of the bench warrant and the bond forfeiture would be stayed if Camara appeared in court the following morning at 8:30 a.m.

(Emphasis added.) Thus, Camara, having failed to appear on September 8 and 9, breached the conditions of her appearance bond, thereby subjecting Aloha to the forfeiture of the bond. Aloha's bail bond included the following provision:

[T]he undersigned surety, or sureties, as surety, hereby undertake that the said defendant will *appear* and answer all charges mentioned in whatever court it may be prosecuted within the state of Hawai'i, and will at all times be amenable to the orders and process of the court, and, if convicted, will appear for judgment, and render self in execution thereof, or *failing to perform either of these conditions will pay to the state of Hawai'i, as provided in sections 804–51 Hawai'i Revised Statutes the sum of . . . $150,000. . . .*

(Emphases added.) The circuit court ordered the forfeiture of Camara's bail, and on September 14, 1994, entered a "Judgment and Order of Forfeiture of Bail Bond," which stated in pertinent part:

The . . . cause having come regularly on for further Jury Trial, before the Honorable Tenney Z. Tongg . . . on September 7,[2] 8, and 9, and the Defendant having failed to appear or to be present on the said date, and the Court, upon motion of the State of Hawai['ji, having on said date ordered and declared the forfeiture of the bail bond filed and posted in this cause, executed by said Defendant, as principal, and American Bonding Company, through its agent and attorney-in-fact, Ida Peppers (Aloha Bail Bond), as surety, in the sum of ONE HUNDRED FIFTY THOUSAND ($150,000), . . . IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the State of Hawai['ji does have and recovers from the principal and the surety above named, jointly and severally,[3] the sum of . . . $150,000.00. . . .

Following the entry of the judgment of forfeiture, Aloha notified the police that Camara might be in the Wai'anae or Nanakuli area. On September 15, 1994, the police arrested Camara in Wai'anae, and she was admitted to the Oahu Community Correctional Facility (OCCC) the following day. On September 20, 1994, Aloha filed a "bail bond surrender," pursuant to HRS § 804–14 (1993).[4]

Thereafter, on September 23, 1994, Aloha submitted its motion to set aside, pursuant to HRS § 804–51 (1993), which provides that either the principal or surety may make an application to the trial court "showing good cause why execution should not issue upon the judgment [of forfeiture]." In its motion, Aloha essentially maintained that, because Camara had been surrendered, good cause as to why execution should not issue had been established. Aloha's motion was heard on October 12, 1994. In ruling on the motion, the circuit court, commenting on what it believed constituted good cause, stated:

[I] agree . . . that the main issue in this case is whether good cause has been shown to set aside the . . . bond forfeiture, and I'm not satisfied that your argument that the bonding company made good faith efforts to locate Ms. Camara after she failed to appear in court for several days is the criteria in this case.

I think that the bond was forfeited for the defendant's non-appearance in court. This was the undertaking—this was the obligation that your bonding company undertook to insure that Ms. Camara would show up in court, *so I think the good cause has to be shown in facts prior to her fleeing* the—or appearing in court or *facts, extenuating circumstances or good cause at the time that she did not appear in court* as to why the forfeiture of the bond should be set aside.

---

2. As previously stated, trial was commenced on September 6, 1994. Although Camara failed to appear the following day, September 7, 1994, the court waived Camara's appearance, and jury selection continued.

3. Pursuant to HRS § 804–51 (1993), a judgment of forfeiture shall be entered "against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof[.]"

4. HRS § 804–14 provides that "[t]hose who may have become bail for anyone, may at any time discharge themselves, by surrendering [the principal] to the custody of any sheriff or chief of police or his [or her] authorized subordinate."

This is an obligation that the bonding company undertook to insure that Ms. Camara showed up in court as ordered by the Court for trial. She failed to show up and *the fact that your client went out to look for her later in my view is not good cause* to set aside the forfeiture.

I think that efforts by the bonding company in possibly insuring that Ms. Camara would show up as ordered by the Court for trial, and, you know, how they screen their principals to be sure that the principal showed up at court and any extenuating circumstances at the time that the principal did not show up in court and what the bonding company did or any other extenuating circumstances is a good cause that in my view has to be shown....

Because Aloha offered no good cause "in facts prior to [Camara] fleeing ... or ... extenuating circumstances or good cause at the time she did not appear in court," the circuit court denied Aloha's motion to set aside.[5]

On October 27, 1994, Aloha moved for reconsideration of the circuit court's denial of its motion to set aside (motion for reconsideration). In its moving papers, Aloha "ask[ed] the Court ... to recognize that the bonding company took diligent efforts [to ensure Camara's appearance] even *before* the fact that the Court officially had ordered the forfeiture...." By minute order dated December 9, 1994, the circuit court denied Aloha's motion for reconsideration. Aloha subsequently filed its notice of appeal on December 16, 1994.

## II. *JURISDICTION*

Plaintiff-appellee State of Hawai'i (appellee) contends that this court lacks jurisdiction to hear Aloha's appeal because Aloha's notice of appeal was not timely filed. Appellee contends that:

The appealable event was the "JUDGMENT AND ORDER OF FORFEITURE OF BAIL BOND," and not the "FINDINGS AND ORDER DENYING SURETY ALOHA BAIL BOND'S MOTION TO SET ASIDE BAIL FORFEITURE." [Aloha] did not file its notice of appeal from the judgment and order of forfeiture, a collateral judgment which was immediately appealable under the collateral order doctrine. Hawaii law requires that an appeal under the collateral order doctrine be taken within thirty days following the entry of the collateral order.

"Jurisdiction is the base requirement for any court considering and resolving an appeal or original action. Without jurisdiction, a court is not in a position to consider the case further." *Wong v. Wong,* 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995) (citing *Pele Defense Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 69 n. 10, 881 P.2d 1210, 1215 n. 10 (1994)). For the reasons discussed below, we hold that Aloha's appeal is properly before this court.

HRS § 804–51, which provides for appeals of bail forfeitures, states in pertinent part:

Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up [sic] judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State, *unless before the expiration of thirty days from the date that notice is given to the surety* or sureties on the bond of the entry of the judgment in favor of the State, *a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court.* ... If the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed *unless the order overruling the mo-*

---

5. The order denying the motion to set aside bail forfeiture was not filed, however, until November 18, 1994.

*tion or application is appealed from as in the case of a final judgment.*

HRS § 804–51 (emphases added).

▇▇▇ "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language of the statute itself." *Housing Fin. & Dev. Corp. v. Castle,* 79 Hawai'i 64, 77, 898 P.2d 576, 589 (1995). A plain reading of the statute indicates that a condition precedent to an appeal from a judgment of forfeiture is the filing of a motion or application by the principal or surety showing good cause why execution should not issue upon the judgment. Under the plain language of the statute, execution upon a judgment of forfeiture is automatically stayed for thirty days from the date that notice of the entry of the judgment is given to the surety. Execution shall issue forthwith upon the expiration of the thirty days *unless* the principal or surety files a motion showing good cause why execution should not issue within the thirty-day period. If a motion to set aside is filed, the execution is further stayed until a hearing is held and the motion is ruled upon.[6] If the motion is overruled, the principal or surety may appeal the adverse ruling. Thus, contrary to appellee's contention, the appealable event is the order denying the motion to set aside the judgment of forfeiture.

Once a motion to set aside is denied, the surety may appeal such denial "as in the case of a final judgment." Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(1),[7] a notice of appeal from a final judgment must be filed within thirty days from the date of entry of the judgment—in this case, thirty days from the order denying the motion to set aside. As previously noted, the order denying Aloha's motion to set aside was filed on November 18, 1994, and Aloha filed its notice of appeal twenty-eight days later, on December 16, 1994. Thus, we hold

that Aloha's appeal was timely; consequently, we have appellate jurisdiction to entertain Aloha's appeal.

## III. *DISCUSSION*

The resolution of this appeal requires us to construe Hawai'i's forfeiture scheme, as set forth in HRS § 804–51. We have stated that

our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citation, brackets, and ellipses omitted).

▇▇▇ In the present appeal, we must determine under what circumstances a principal or a surety may secure relief from a judgment of forfeiture. The interpretation of a statute is a question of law reviewable *de novo. Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

---

6. If the motion is sustained, the judgment of forfeiture is vacated, and the surety thereafter remains liable on the bond unless the principal surrenders or is surrendered pursuant to HRS §§ 804–14 or 804–41 (1993). *See, e.g., State v. Wheeler,* 499 So.2d 1275 (La.App.1987) (if judgment of forfeiture vacated, surety remains liable on the bond because order vacating judgment of forfeiture reinstates bond and all parties to posi-

tions prior to forfeiture as if forfeiture had never occurred).

7. HRAP 4(a), as opposed to HRAP 4(b), applies because forfeiture of a bond is a civil proceeding. *United States v. Brown,* 835 F.2d 176 (8th Cir. 1987).

### A. Hawai'i's Forfeiture Scheme

As previously indicated, under HRS § 804–51, execution upon a judgment of forfeiture shall issue forthwith upon the expiration of thirty days from the date the surety receives notice of the judgment of forfeiture [hereinafter, thirty-day search period], *unless* the principal or the surety (or both) files a motion or application "showing good cause why execution should not issue upon the judgment," HRS § 804–51, prior to the expiration of the thirty-day search period. Problematically, Hawai'i's forfeiture statute does not specify what constitutes "good cause why execution should not issue upon the judgment." Nor has this court had prior occasion to construe "good cause" in the context of Hawai'i's forfeiture statute.

■ As previously stated, the circuit court denied Aloha's motion to set aside because it believed that "good cause has to be shown in facts *prior to her fleeing ... or [not] appearing in court* or facts, extenuating circumstances or good cause *at the time that she did not appear in court* [.]" (Emphases added.) We believe the circuit court's interpretation of Hawai'i's forfeiture statute was unduly restrictive. HRS § 804–51 further provides that,

> [i]f the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, *if the principal surrenders or is surrendered pursuant to section 804–14*[8] *or 804–41* [9], return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal[.]

HRS § 804–51 (emphasis added). In our view, "good cause why execution should not issue upon the judgment" of forfeiture may be satisfied by the defendant, prior to the expiration of the thirty-day search period: (1) providing a satisfactory reason for his or her failure to appear when required; or (2) surrendering or being surrendered.

### 1. Satisfactory Reason for Defendant's Failure to Appear When Required

"Since there is no reason for penalizing ... sureties where it appears that they are unable, through no fault of their own or of the principal, to perform the conditions of the bond, forfeitures of bail bonds will generally be vacated ... where it appears to the satisfaction of the court that uncontrollable circumstances prevented appearance pursuant to the stipulations in the bond, [or] that the default of the principal was excusable[.]" 8 Am.Jur.2d *Bail and Recognizance* § 184 (1980) at 707; *see, e.g., Makeig v. State,* 802 S.W.2d 59, 62–63 (Tex.App.1990) ("Generally, sufficient cause [to set aside a forfeiture] is a showing that the party did not break his [or her] recognizance intentionally, with the design of evading justice, or without a sufficient cause or reasonable excuse, such as unavoidable accident or inevitable necessity preventing his [or her] appearance.").

In accordance with the general rule, we hold that the phrase "good cause why execution should not issue upon the judgment" encompasses a showing of a satisfactory reason for a defendant's failure to appear when required.

### 2. Defendant Surrenders or Is Surrendered

In 1989, the legislature amended HRS § 804–51 to require the court to give written notice to the surety upon forfeiture of any bail bond and to allow the surety thirty days, as opposed to the then-existing ten days, to move to set aside the bail forfeiture. *See* Sen.Stand.Comm.Rep. No. 857, in 1989 Senate Journal, at 1127–28. The Senate Committee on the Judiciary reported that:

> This bill [S.B. No. 1061, which became part of Act 289 that amended HRS § 804–51] is to address the situation where a bail bondsperson is not informed for some time after the defendant fails to make a court

---

8. *See supra* note 4.

9. HRS § 804–41 (1993) provides that, "[a]t any time before the breach of the condition of the bond, the surety may discharge oneself by sur-

> rendering the principal into the hands of any sheriff or the chief of police or the sheriff's or chief's authorized subordinate."

appearance. Allegedly, *the first several days are crucial to a bail bonds[person's] ability to find a defendant.* Bail bonds[persons] maintain that if the information that the defendant has not appeared for court is obtained immediately, then the bonds[person] has a good chance of *finding* the defendant before he [or she] leaves Hawaii.

The present statute allows for a bail bonds[person] to have the bail forfeiture set aside, but only within ten days after the defendant has failed to appear for court. Bail bonds[persons] claim that they are not even informed within this ten-day period that the defendant has failed to appear for court.

Your Committee sees a need to balance both the interest of the bail bonds[persons] with that of the prosecution and the court in order to promote fairness to all parties involved in the process. *In such regard, in the event that the bill [sic] forfeiture is vacated by the court, your Committee believes that it is appropriate that the prosecution and the court be reimbursed for the costs incurred by them.* In such regard, your Committee has added the following provisions to this bill:

> "If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment or forfeiture and, if the principal surrenders or is surrendered pursuant to Section 804–14[10] or Section 804–41[11], return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any costs, as established at the hearing, incurred by the State as a result of the non-appearance of the principal or other event on the basis of which the court forfeited the bond or recognizance."

*Id.* (emphases added).

The legislative history clearly demonstrates the legislature's intent to allow a surety the opportunity to locate the principal before execution of the judgment of forfeiture actually occurs, and, if the principal surrenders or is surrendered during the thir-ty-day search period, the surety would be entitled to return of the bond, less costs. Such an intent is consistent with the principal that "the primary purpose[ ] of bail in a criminal case is not to punish a defendant or surety, nor to increase the revenue of the State, but rather to honor the presumption of innocence, to allow a defendant to prepare his [or her] case, and to ensure the defendant's presence in the pending proceeding." *State v. Seybert,* 231 Mont. 372, 753 P.2d 325, 326 (1988) (citations and internal quotation marks omitted); *see also United States v. Diaz,* 811 F.2d 1412, 1415 (11th Cir.1987) (purpose of bond is, *inter alia,* to secure the presence of defendant to answer charges).

Moreover, whenever a defendant surrenders or is surrendered, returning the bond to the surety, less costs, "provide[s] the [surety] with an incentive for securing the arrest of the defendant. If no part of the penalty of the bond could be remitted, there would be no inducement to the [surety] to have the defendant arrested and brought to justice." 8 Am.Jur.2d *Bail and Recognizance* § 174 (1980).

Thus, based on our review of HRS § 804–51 and its legislative history, we hold that "good cause why execution should not issue upon the judgment" of forfeiture may be shown by the defendant surrendering or being surrendered prior to the expiration of the thirty-day search period.

## B. *Return of the Bond*

Despite our holding that the principal surrendering or being surrendered constitutes "good cause" under HRS § 804–51, appellee maintains that the judgment of forfeiture should not be vacated and the bond returned to the surety because it was *the police* who arrested and "surrendered" Camara, *not the surety.* In other words, appellee's position is that, unless the principal is actually surrendered *by the surety,* the surety is not entitled to recover any portion of the bond. We disagree for three principal reasons.

First, as previously stated, "[w]hen construing a statute, our foremost obligation is

---

**10.** *See supra* note 4.

**11.** *See supra* note 9.

to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language of the statute itself." *Housing Fin. & Dev. Corp.*, 79 Hawai'i at 77, 898 P.2d at 589.

 HRS § 804–51 provides that, "if the principal surrenders or is surrendered pursuant to Section 804–14[12] or Section 804–41[13]" the court shall return the bond to the surety, less costs. Under our reading of the statute, one of two alternative conditions must be met in order for the surety to recover its bond, less costs: either (1) the principal surrenders, which, in our view, includes both voluntary and involuntary surrender by the principal to law enforcement officials; or (2) the principal is surrendered by the surety to the appropriate authorities.

Second, returning the bond to the surety, less costs, is consistent with the general principle that the primary purpose of bail is not to punish the defendant or surety, *see Seybert*, 753 P.2d at 326, but to secure the presence of the defendant to answer the charges against him or her. *See Diaz*, 811 F.2d at 1415. Whether the principal personally surrenders, voluntarily or otherwise, on the one hand, or is surrendered by the surety, on the other, is of no consequence. In our view, if the State regains custody of the defendant prior to the expiration of the thirty-day search period and the surety receives partial return of its bond, the primary purpose of bail would be met. To hold otherwise would result in punishment of the surety and possibly of the defendant.

Finally, to hold that the surety may not secure relief from the judgment of forfeiture because the principal was apprehended by law enforcement officials, and not the surety, would discourage bondspersons from cooperating with law enforcement officials in their pursuit of a defendant. If we were to hold as appellee urges, sureties, in an effort to protect their interests, would effectively be encouraged to engage in conduct that could jeopardize public safety in an attempt to gain custody of a principal without assistance

from law enforcement officials. Encouraging bondspersons to cooperate with the appropriate authorities by providing information of a defendant's whereabouts, so that such authorities may take the necessary precautions when apprehending the defendant, would promote both public safety and the safety of the bondspersons and the defendant.

Accordingly, we hold that Aloha is entitled to the return of its bond, less costs.

## IV.  CONCLUSION

Based on the foregoing, we vacate the circuit court's denial of Aloha's motion to set aside and remand this case for rehearing to determine the amount of costs to be deducted from the bond. Thereafter, the remaining amount shall be returned to Aloha.

---

12.  *See supra* note 4.

13.  *See supra* note 9.  Because HRS § 804–41 provides that a surety may discharge itself "[a]t

any time *before* the breach of the condition of the bond," section 804–41 is inapplicable under the facts of this case.