114 P.3d 905

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Miti MAUGAOTEGA, Jr., Defendant– Appellant.**

**No. 26657.**

Supreme Court of Hawai'i.

June 29, 2005.

Karen T. Nakasone, Deputy Public Defender, on the briefs, for the defendant-appellant Miti Maugaotega, Jr.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; and ACOBA, J., dissenting, with whom DUFFY, J., joins.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Miti Maugaotega, Jr. appeals from the judgments of the circuit court of the first circuit, the Honorable Patrick Border presiding, filed on May 17, 2004 and May 18, 2004, convicting him of and sentencing him for twenty-two offenses in five criminal cases, *see infra* Section I.

On appeal, Maugaotega contends that the circuit court plainly erred in sentencing him to extended terms of imprisonment as a "multiple offender," pursuant to HRS § 706–662(4)(a) (1993 & Supp.2003),[1] inasmuch as

---

1. HRS § 706–662 provides in relevant part:

**Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:
(1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
. . . .
(3) The defendant is a dangerous person whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others. Nothing in this section precludes the introduction of victim-related data in order to establish dangerousness in accord with the Hawaii rules of evidence.
(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:
(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony.
(5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:
(a) The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under chapter 707, robbery, felonious assault, burglary, or kidnapping; and
(b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:
(i) Sixty years of age or older;
(ii) Blind, a paraplegic, or a quadriplegic; or
(iii) Eight years of age or younger; and
(c) Such disability is known or reasonably should be known to the defendant.
(6) The defendant is a hate crime offender whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:
(a) The defendant is convicted of a crime under chapter 707, 708, or 711; and
(b) The defendant intentionally selected a victim, or in the case of a property crime, the

the jury did not decide that such extended terms of imprisonment were necessary for the protection of the public, and, therefore, that the extended term sentences imposed by the circuit court ran afoul of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

We note that this court's recent analysis and decision in *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004), which reaffirmed this court's holding in *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003), that Hawaii's extended term sentencing scheme does not run afoul of *Apprendi*, disposes of Maugaotega's point of error on appeal. Nevertheless, on January 12, 2005, the United States Supreme Court decided *United States v. Booker*, — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), holding that federal sentencing guidelines are subject to the jury trial requirements of the sixth amendment, and severing provisions making the guidelines mandatory. Accordingly, we take this opportunity to reassert the viability of this court's analytical "intrinsic-extrinsic" approach to Hawaii's statutory extended term sentencing scheme.

We hold that our approach to Hawaii's extended term sentencing scheme, as explicated in *Kaua* and *Rivera*, is not at odds with *United States v. Booker*, inasmuch as (1) *Booker's* holding is limited to the federal sentencing guidelines, and (2) Hawaii's extended term sentencing structure is not mandatory. We therefore affirm Maugaotega's sentences.

## I. BACKGROUND

### A. Cr. No. 03–1–1897

On September 3, 2003, an O'ahu grand jury returned an indictment against Mau-

gaotega in Cr. No. 03–1–1897, charging him with the following offenses: (1) attempted murder in the second degree (Count I), in violation of Hawai'i Revised Statutes (HRS) §§ 707–701.5 (1993) and 707–500 (1993); (2) use of a firearm·in the commission of a felony (Counts II and V), in violation HRS § 134–6(a) and (e) (Supp.2003); (3) robbery in the first degree (Count III), in violation of HRS § 708–840(1)(b)(i) and/or (ii) (1993 & Supp. 2003); (4) burglary in the first degree (Count IV), in violation of HRS § 708–810(1)(c) (1993); (5) place to keep firearm (Count VI), in violation of HRS § 134–6(c) and (e) (Supp. 2003); (6) promoting a dangerous drug in the third degree (Counts VII and VIII), in violation of HRS § 712–1243 (1993 & Supp.2003); and (7) unlawful possession of drug paraphernalia (Count IX), in violation of HRS § 329–43.5(a) (1993).

Following a jury trial that ended on March 3, 2004, Maugaotega was found guilty as charged on all nine counts. On April 22, 2004, the prosecution filed a motion for extended terms of imprisonment, pursuant to HRS § 706–662(4)(a), *see supra* note 1.

### B. Cr. No. 03–1–2727

On December 18, 2003, an O'ahu grand jury returned an indictment against Maugaotega in Cr. No. 03–1–2727, charging him with the one count of promoting prison contraband, in violation of HRS § 710–1022(1)(b) (1993).

On March 8, 2004, Maugaotega entered a no contest plea to the charge. On April 21, 2004, the prosecution filed a motion for an extended term of imprisonment, pursuant to HRS § 706–662(4)(a), *see supra* note 1.

### C. Cr. No. 03–1–2726

On December 18, 2003, an O'ahu grand jury returned an indictment against Maugaotega in Cr. No. 03–1–2726, charging him with the following offenses: (1) sexual assault

property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, gender identity or expression, or sexual orientation of any person. For purposes of this subsection, "gender identity or expression" includes a person's actual or perceived gender, as well as a

person's gender identity, gender-related self-image, gender-related appearance, or gender-related expression; regardless of whether that gender identity, gender-related self-image, gender-related appearance, or gender-related expression is different from that traditionally associated with the person's sex at birth.

in the first degree (Counts I and II), in violation of HRS § 707–730(1)(a) (1993 & Supp.2003); (2) robbery in the first degree (Count III), in violation of HRS § 708–840(1)(b)(ii) (1993 & Supp.2003); (3) burglary in the first degree (Count IV), in violation of HRS § 708–810(1)(c) (1993); (4) use of a firearm in the commission of a felony (Count V), in violation HRS § 134–6(a) and (e) (Supp.2003); and (5) assault in the second degree (Count VI), in violation of HRS § 707–711(1)(d) (1993).

On March 8, 2004, Maugaotega entered a no contest plea to all six counts. On April 21, 2004, the prosecution filed a motion for extended terms of imprisonment, pursuant to HRS § 706–662(4)(a), *see supra* note 1.

### D. *Cr. No. 03–1–2725*

On December 18, 2003, an Oʻahu grand jury returned an indictment against Maugaotega in Cr. No. 03–1–2725, charging him with the following offenses: (1) robbery in the first degree (Counts I and II), in violation of HRS § 708–840(1)(b)(ii) (1993 & Supp. 2003); (2) burglary in the first degree (Count III), in violation of HRS § 708–810(1)(c) (1993); and (3) use of a firearm in the commission of a felony (Count IV), in violation HRS § 134–6(a) and (e) (Supp.2003).

On March 8, 2004, Maugaotega entered a no contest plea to all four counts. On April 21, 2004, the prosecution filed a motion for extended terms of imprisonment, pursuant to HRS § 706–662(4)(a), *see supra* note 1.

### E. *Cr. No. 03–1–2724*

On December 18, 2003, an Oʻahu grand jury returned an indictment against Maugaotega in Cr. No. 03–1–2724, charging him with burglary in the first degree (Counts I and II), in violation of HRS § 708–810(1)(c) (1993).

On March 8, 2004, Maugaotega entered a no contest plea to both counts. On April 21, 2004, the prosecution filed a motion for extended terms of imprisonment, pursuant to HRS § 706–662(4)(a), *see supra* note 1.

### F. *Sentencing*

The circuit court conducted a sentencing hearing on May 17, 2004, during which it sentenced Maugaotega in all five criminal numbers and considered the prosecution's five motions for extended term sentencing. The circuit court concluded that Maugaotega was a multiple offender under HRS § 706–662(4)(a) and orally granted each of the prosecution's motions for extended terms of imprisonment as follows:

THE COURT: The next motion by the [prosecution] under Criminal Number 03–1–1897 is a motion for extended term of imprisonment pursuant to [HRS] Section 706–661 and 706–662(4)(a). Under 661, subsection one, the extended term for [m]urder in the [s]econd [d]egree is life without the possibility of parole.

In Count I, for the charge of [a]ttempted [m]urder, the court cites to [HRS] Section 705–500 and 706–662(4)(a) as a basis for its ruling. Under 706–662(4)(a) the requirement must be that the defendant is a multiple offender whose criminal actions are so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public.

The court shall not make this finding unless the defendant is being sentenced for two or more felonies. Today, [Maugaotega] is being sentenced for 22 felonies, 14 of which involved the named victim, twelve of those involving the use of a firearm in the commission of the offense. Yet another offense, [p]romoting [p]rison [c]ontraband in the [f]irst [d]egree, involves the use or introduction into the prison of a device which is dangerous in nature, to wit, a shank[,] and [this] represents a heightened danger, particularly when introduced into a prison setting.

A careful examination of [Maugaotega]'s conduct in the period between May and June of 2003 demonstrates a pattern of escalating violence. The ... first offenses in late May were burglaries, primarily involving a risk to property. The second cluster of offenses involved—escalated to robberies with the use of a semi-automatic weapon in furtherance of crimes.

The third cluster of offenses involved [s]exual [a]ssault and [r]obbery, once again facilitated by the use of a firearm. The most violent of the offenses followed in June 26th with the attempted murder of Eric Kawamoto. There were a total of six named victims of violent or potentially violent crimes within the relative short period between late May and the end of June, 2003.

Given the facts of these offenses, the court concludes that [Maugaotega] is a multiple offender under [HRS § ] 706–662(4)(a). These criminal actions were so extensive that the sentence of imprisonment for an extended term is necessary for the protection of the public. *Consequently, the [prosecution]'s motion for extended term of imprisonment in Criminal Number 03–1–1897 is granted.*

Pursuant to [HRS §§ ] 705–500 and 706–661, the court extends the term of imprisonment in Count I to life without the possibility of parole; in Counts II, III and V, to life; in Counts IV and VI, to 20 years each, and in Counts VII, VIII, and IX to ten years each. Said extended terms are to run concurrent with each other.

. . . .

The [prosecution]'s next motion under Criminal Number 03–1–2724 is a motion for extended term of imprisonment of 20 years. Inasmuch as the offenses under this criminal number are [b]urglaries in the [f]irst [d]egree, these are both Class B felonies for which the extended term would be 20 years per offense. . . .

. . . . The multiple offender analysis of this court that this court has followed . . . is identical to that earlier described in the offense of [a]ttempted [m]urder in the [s]econd [d]egree.

Given the facts of these offenses, the court concludes [that Maugaotega] is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public. Section 706–662 subparagraph four. *Therefore, the [prosecution]'s motion for extended term of imprisonment in [Cr. No. 03–1–]2724 is granted in both Counts*

*I and II, and the court extends the sentence in each count to 20 years each.*

Next, [in Cr. No. 03–1–2725,] the [prosecution] moves for extended term of imprisonment. As previously stated, the facts of the offense[s] warrant this court to conclude that [Maugaotega] is a multiple offender under [HRS § 706–]662(4)(a) whose criminal actions were so extensive that [a] sentence of imprisonment for an extended term is necessary for the protection of the public. *Consequently[,] the [prosecution]'s motion for extended term of imprisonment in [Cr. No.] 03–1–2725 is granted.* Pursuant to [HRS § ] 706–661, the court extends the term of imprisonment in Counts I and II to life and in Count III to 20 years.

. . . .

Next, [in Cr. No. 03–1–2726,] the [prosecution] moves for extended term of imprisonment as to all counts. As previously stated, the facts of the offenses warrant this court to conclude that [Maugaotega] is a multiple offender under [HRS § 706–]662(4)(a) whose criminal actions were so extensive that the sentences of imprisonment for an extended term are mandated for the protection of the public. *Consequently[,] the [prosecution]'s motion for extended term of imprisonment in [Cr. No.] 03–1–2726 is granted.*

Pursuant to [HRS § ] 706–661, the court extends the term of imprisonment to life as to Counts I, II, III, and V and to 20 years as to Count IV and to ten years as to Count VI, said terms to run concurrent with one another.

. . . .

We are now to Criminal Number 03–1–2727. . . .

The [prosecution] then moves for extended term of imprisonment. As previously stated, the facts of the offense warrant this court to conclude that [Maugaotega] is a multiple offender under [HRS § 706–]662(4)(a) whose criminal actions were so extensive that the sentence of imprisonment for an extended term is necessary for the protection of the public.

*Consequently, the [prosecution]'s motion for extended term of imprisonment in [Cr. No.] 03–1–2727 is granted.* Pursuant to [HRS § ] 706–661, this court extends the term of imprisonment to 20 years as to Count I.

(Emphases and brackets added.) Maugaotega neither argued generally that the circuit court was without authority to impose extended prison terms nor interposed a specific *Apprendi* objection to the circuit court's imposition of extended terms of imprisonment.

On September 8, 2004, the circuit court filed its written findings of fact (FOFs), conclusions of law (COLs), and orders granting the prosecution's motions for extended terms of imprisonment as a multiple offender, wherein the circuit court entered the following identical FOFs and COLs as to each Criminal Number:

### FINDINGS OF FACT

1. Miti Maugaotega, Jr. is a "multiple offender" within the meaning of Section 706–662(4)(a) of the Hawaii Revised Statutes, because on May [17], 2004, before the Honorable Patrick W. Border, said Defendant was sentenced for two or more felonies, to wit:

Cr. No. 03-1-1897

| | |
|---|---|
| Count I: | Attempted Murder in the Second Degree |
| Count II: | Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony |
| Count III: | Robbery in the First Degree |
| Count IV: | Burglary in the First Degree |
| Count V: | Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony |
| Count VI: | Place to Keep Pistol or Revolver |
| Count VII: | Promoting a Dangerous Drug in the Third Degree |
| Count VIII: | Promoting a Dangerous Drug in the Third Degree |
| Count IX: | Unlawful Use of Drug Paraphernalia; |

Cr. No. 03-1-2724

| | |
|---|---|
| Count I: | Burglary in the First Degree |
| Count II: | Burglary in the First Degree; |

Cr. No. 03-1-2725

| | |
|---|---|
| Count I: | Robbery in the First Degree |
| Count II: | Robbery in the First Degree |
| Count III: | Burglary in the First Degree |
| Count IV: | Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony; |

Cr. No. 03-1-2726

| | |
|---|---|
| Count I: | Sexual Assault in the First Degree |
| Count II: | Sexual Assault in the First Degree |
| Count III: | Robbery in the First Degree |
| Count IV: | Burglary in the First Degree |
| Count V: | Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony |
| Count VI: | Assault in the Second Degree; and |

Cr. No. 03-1-2727

Promoting Prison Contraband in the First Degree.

2. Miti Maugaotega, Jr. is a "multiple offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:

a. Defendant has an extensive juvenile criminal history.

b. Defendant's criminality has continued despite his prior contacts with the criminal justice system.

c. Defendant has failed to benefit from the criminal justice system.

d. Defendant has demonstrated a total disregard for the rights of others and a poor attitude toward the law.

e. Defendant has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of the law.

f. Due to the quantity and seriousness of the instant offense, Defendant poses a serious threat to the community and his long[-]term incarceration is necessary for the protection of the public.

### CONCLUSIONS OF LAW

1. Based on the foregoing facts, the [c]ourt concluded that the Defendant is a "multiple offender" within the meaning of Section 706–662(4)(a), H.R.S., whose commitment for an extended term is necessary for the protection of the public. Section 706–662(4), H.R.S.

. . . .

On June 16, 2004, Maugaotega timely filed notices of appeal in the aforementioned five criminal numbers.

## II. STANDARDS OF REVIEW

### A. Sentencing

[A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray*[,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

*Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)) (brackets and ellipsis points in original).

### B. Questions Of Constitutional Law

"We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (quoting *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

### C. Statutory Interpretation

"[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994)....

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its

true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Kaua,* 102 Hawai'i at 7–8, 72 P.3d at 479–480 (quoting *Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32 (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

### D. *Plain Error*

" 'We may recognize plain error when the error committed affects substantial rights of the defendant.' " *State v. Cordeiro,* 99 Hawai'i 390, 405, 56 P.3d 692, 707, *reconsideration denied,* 100 Hawai'i 14, 58 P.3d 72 (2002) (quoting *State v. Jenkins,* 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997))). *See also* [Hawai'i Rules of Penal Procedure] HRPP Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Hauge,* 103 Hawai'i 38, 48, 79 P.3d 131, 141 (2003) (quoting *State v. Matias,* 102 Hawai'i 300, 304, 75 P.3d 1191, 1195 (2003)).

### III. *DISCUSSION*

 Maugaotega argues that the circuit court erred in granting each of the prosecution's five motions for extended terms of imprisonment because the finding that extended terms were necessary for the protection of the public was not submitted to a jury and proved beyond a reasonable doubt, in violation of the sixth amendment to the United States Constitution. Maugaotega urges this court to reconsider its holding in *Rivera,* submitting that "[a]llowing a judge to pick and choose which factors [a]re 'intrinsic' or 'extrinsic' leads to the same type of arbitrariness and absurdity" that the United States Supreme Court sought to curb in *Apprendi* and *Blakely.* We believe that Maugaotega's arguments are without merit.

*Booker* addressed the constitutionality of the statutory federal sentencing guidelines in the context of the Supreme Court's recent decisions in *Apprendi* and *Blakely.* The *Booker* majority held (1) that the federal sentencing guidelines are subject to *Apprendi* constraints and (2) that the provisions of the Federal Sentencing Act making the sentencing guidelines mandatory were incompatible with *Apprendi,* thereby requiring severance of those provisions and rendering the guidelines advisory only. In our view, *Booker's* holdings—interpreted through the lenses of *Apprendi* and *Blakely*—are limited to the *mandatory* nature of the federal sentencing guidelines. Therefore, inasmuch as Hawaii's extended term sentencing scheme is purely discretionary and not mandatory, we believe that *Booker,* in itself, does not affect this court's "intrinsic-extrinsic" analysis as enunciated in *Kaua* and reaffirmed in *Rivera.*[2]

Booker's case illustrates the mandatory nature of the Guidelines. The jury convicted him of possessing at least 50 grams of crack in violation of 21 [United States Code] § 841(b)(1)(A)(iii) based on evidence that he had 92.5 grams of crack in his duffel bag. Under these facts, the Guidelines specified an offense level of 32, which, given the defendant's criminal history category, authorized a sentence of 210–to–262 months. *See* [United States Sentencing Guidelines] § 2D1.1(c)(4). Booker's is a run-of-the-mill drug case, and does not present any factors that were inadequately considered by the Commission. The sentencing judge would therefore have been reversed had he not imposed a sentence within the level 32 Guidelines range.

Booker's actual sentence, however, was 360 months, almost 10 years longer than

---

**2.** For an analysis of the impact of *Apprendi* and its progeny on our extended term sentencing scheme, as well a history of Hawaii's indeterminate sentencing system, *see State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003), and *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004).

the Guidelines range supported by the jury verdict alone. To reach this sentence, the judge found facts beyond those found by the jury: namely, that Booker possessed 566 grams of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just as in *Blakely*, "the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." 542 U.S. at ——, 124 S.Ct., at 2538. There is no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in these cases.

*Booker*, 125 S.Ct. at 751.

Justice Stevens, writing for the majority in the first part of the Court's opinion in *Booker*, explained that

[i]f the Guidelines as currently written could be read as merely *advisory* provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.*

*Booker*, 125 S.Ct. at 750 (citations omitted) (emphases added).

Justice Breyer, writing for the majority in the Court's second holding in *Booker*, explained why, in light of the Court's first holding, it was necessary to excise the provisions of the Federal Sentencing Act that made the guidelines mandatory:

As the Court today recognizes in its first opinion in these cases, the existence of § 3553(b)(1) is a necessary condition of the constitutional violation. That is to say, without this provision—namely the provision that makes "the relevant sentencing rules ... mandatory and impose[s] binding requirements on all sentencing judges"— the statute falls outside the scope of *Apprendi's* requirement.

The remainder of the Act "function[s] independently." Without the "mandatory" provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. *See* 18 U.S.C.A. § 3553(a) (Supp.2004). The Act nonetheless requires judges to consider the Guidelines "sentencing range established for ... the applicable category of offense committed by the applicable category of defendant," § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp.2004). *And the Act nonetheless requires judges to impose sentences that* reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, *protect the public*, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2) (main ed. and Supp.2004).

*Booker*, 125 S.Ct. at 764–65 (some citations omitted) (emphases added). Thus, the declaration by both majorities in *Booker* (1) that rendering the federal sentencing guidelines *advisory* rather than *mandatory* remedies their unconstitutionality and (2) that the Federal Sentencing Act continues to require judges to impose sentences that, among other things, "protect the public" essentially erases *discretionary* extended term sentencing schemes such as Hawaii's from the decision's purview.

Hence, *Booker* does not alter the applicability of *Kaua* and *Rivera* to Maugaotega's current challenge of his extended term sentences under HRS § 706–662(4)(a) and disposes of his argument on appeal.

*Kaua* reaffirmed the "intrinsic-extrinsic" analysis first articulated by this court in *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994), and reaffirmed in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890 (1999), and rejected the defendant's argument that *Apprendi* mandated that a "multiple offender" determination, for purposes of HRS § 706–662(4)(a), must be made by the trier of fact, holding (1) that HRS

§ 706–662 passed constitutional muster under the Hawai'i and United States Constitutions and (2) that "[t]he facts foundational to ... extended terms of imprisonment ..., pursuant to HRS § 706–662(4)(a), fell outside the *Apprendi* rule, and, thus, the ultimate finding that [a defendant] was a 'multiple offender' whose extensive criminal actions warranted extended prison terms was properly within the province of the sentencing court." *Kaua*, 102 Hawai'i at 13, 72 P.3d at 485. In so holding, this court noted

> the fundamental distinction between the nature of the predicate facts described in HRS §§ 706–662(1), (3), and (4), ... on the one hand, and those described in HRS §§ 706–662(5) and (6), ... on the other. Specifically, the facts at issue in rendering an extended term sentencing determination under HRS §§ 706–662(1), (3), and (4) implicate considerations completely "extrinsic" to the elements of the offense with which the defendant was charged and of which he was convicted; accordingly, they should be found by the sentencing judge in accordance with [*State v.] Huelsman* [, 60 Haw. 71, 588 P.2d 394 (1979),] and its progeny. The facts at issue for purposes of HRS §§ 706–662(5) and (6), however, are, by their very nature, "intrinsic" to the offense with which the defendant was charged and of which he has been convicted; accordingly, they must be found beyond a reasonable doubt by the trier of fact in order to afford the defendant his constitutional rights to procedural due process and a trial by jury. *Tafoya*, 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203.

*Id.* at 12–13, 72 P.3d at 484–85 (emphases added).

*Hauge*, 103 Hawai'i at 59–60, 79 P.3d at 152–53 (emphases deleted) (brackets in original). *Rivera* reaffirmed our reasoning in *Kaua* by holding that "Hawaii's extended term sentencing scheme is not incompatible with *Blakely v. Washington*, inasmuch as (1) *Blakely* addresses only statutory 'determinate' sentencing 'guideline' schemes, and (2) this court's 'intrinsic-extrinsic' analysis culminating in *Kaua* is compatible with both *Blakely* and *Apprendi*." 106 Hawai'i at 150, 102 P.3d at 1048. Consequently, *Rivera* stated that "this court's *Kaua* analysis retains its vitality with respect to Rivera's present challenge of HRS §§ 706–662(1) and (4)(a) and disposes of his claim that the circuit court erred in imposing extended term sentences." 106 Hawai'i at 157, 102 P.3d at 1055.

We acknowledge that the federal sentencing guidelines differ qualitatively from Hawaii's extended term sentencing scheme, in that the federal guidelines do not prescribe or suggest sentences that exceed the statutory maximum as set forth in the respective federal criminal statutes themselves, whereas Hawaii's discretionary extended term sentencing scheme generally doubles the relevant statutorily-prescribed indeterminate maximum prison term. Nonetheless, we do not believe that *Booker* alters the essential holdings of *Apprendi* and *Blakely*. The factor that rendered the federal sentencing guidelines unconstitutional was its mandatory nature.

> [T]he Act without its "mandatory" provision and related language remains consistent with Congress' initial and basic sentencing intent. Congress sought to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities ... [and] maintaining sufficient flexibility to permit individualized sentences when warranted." 28 U.S.C. § 991(b)(1)(B)[.]

*Booker*, 125 S.Ct. at 767 (some brackets added and some in original).

In the present matter, the circuit court was first required to consider the factors set forth in HRS § 706–606 (1993)[3] "in determining the particular sentence to be imposed." Among the traditional sentencing

---

**3.** HRS § 706–606 provides:

> **Factors to be considered in imposing a sentence.** *The court, in determining the particular sentence to be imposed, shall consider:*

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) *The need for the sentence imposed:*

considerations set forth in HRS § 706–606 is the "need for the sentence imposed . . . [t]o protect the public from further crimes of the defendant." *See* HRS § 706–606(2)(c). As we explained in *Rivera,*

> inasmuch as both HRS §§ 706–606 and 706–662 require the determination of whether the sentence imposed is needed to protect the public, the sole . . . factor, beyond those already enumerated in HRS § 706–606 and already considered by the sentencing court, which extends an indeterminate prison term pursuant to HRS § 706–662(4)(a), is the fact that a defendant is a multiple offender. The multiple offender determination, pursuant to HRS § 706–662(4)(a), mirrors the prior conviction exception in *Apprendi* because the defendant has either already pleaded guilty, and thereby admitted guilt, or the trier of fact has found beyond a reasonable doubt that the defendant has committed two or more felonies for which he is currently being sentenced. *See Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (reasoning that both the "certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge . . . that 'fact[,]' . . . mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range").

106 Hawai'i at 163, 102 P.3d at 1061.

Because *Booker* merely struck down the compulsory nature of the otherwise legiti-

> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> (b) To afford adequate deterrence to criminal conduct;
> (c) *To protect the public from further crimes of the defendant;* and
> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
> (Emphases added).

1. HRAP Rule 28(j) states:

mate federal sentencing guidelines scheme, Hawaii's wholly discretionary extended term sentencing apparatus does not fall within *Booker's* purview. That being so, we hold that *Booker* has no bearing on this court's disposition of the present matter.

## IV. CONCLUSION

In light of the foregoing analysis, we affirm the judgments and sentences of the circuit court.

Dissenting Opinion by ACOBA, J., with whom DUFFY, J., Joins.

The parties cite and refer to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and this court's recent decision in *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004). None of the parties cite to *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in any post-briefing communication. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(j) (2005).[1] It would appear inapposite to use the instant case as a vehicle for expounding on matters in *Booker* inasmuch as this case does not raise the issues with which *Booker* was concerned, *see Booker,* —— U.S. at —— n. 1, 125 S.Ct. at 747 n. 1 ("The questions presented are: 1. Whether the Sixth Amendment is violated by the imposition of an enhanced sentence under the *Unit-*

*Citation of supplemental authorities.* Parties may, by letter to the appellate clerk bring to the appellate court's attention pertinent and significant authorities published after a party's brief has been filed, but before a decision. A copy of the letter, setting forth the citations, shall be served at or before the time of filing as provided by Rule 25(b) of these rules. The letter shall provide references to either the page(s) of the brief or to a point argued orally to which the citations pertain. The letter shall, without argument, state the reasons for the supplemental citations. The parties shall provide the court with seven copies unless the case is assigned to the intermediate court of appeals in which case five copies shall be provided. Any response shall be made promptly and shall be similarly limited.

*ed States Sentencing Guidelines* ... and 2. If the answer to the first question is 'yes,' ... whether ... the *Sentencing Guidelines* as a whole would be inapplicable[.]" (emphases added) (internal quotation marks, citation, and block format omitted)), or share a commonality of fact and law with the situation in *Booker.* Until the parties before us argue the relevance and materiality of *Booker* in a specific case presented on appeal, I do not believe that the discussion the majority undertakes is germane. Based on the dissent in *Rivera,* I would vacate the extended terms of imprisonment and remand for resentencing in conformance with *Apprendi.*